UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Joseph McGrath,** | ) | **CASE NO. 1:07 CV 1525** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Allstate Insurance Company,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**Introduction**

This matter is before the Court upon defendant Allstate's Motion for Summary Judgment (Doc. 19), plaintiff's Motion for Summary Judgment (Doc. 21) and plaintiff's Motion to Withdraw and/or Amend Defendant's First Set of Requests for Admissions Based on the Plaintiff Never Being Served (Doc. 23). For the following reasons, defendant's motion is GRANTED and plaintiffs' motions are DENIED.

**Facts**

Plaintiff, Joseph McGrath, filed this Complaint, *pro se,* in the Cuyahoga County Common Pleas Court against defendant, Allstate Insurance Company (correctly identified by

1

defendant as Allstate Indemnity Company).  The case was removed to this Court by defendant on the basis of diversity of citizenship.  The Complaint alleges that plaintiff acquired a $25,000.00 renters insurance policy from defendant.  In April 2005, plaintiff's garage was burglarized and personal property exceeding $30,000.00 was stolen.  Plaintiff filed a claim with defendant but the latter refused to reimburse him.  The following facts are submitted with the parties' briefing herein.

Gregory K. Woolley, Staff Claim Service Adjuster for defendant, declares the following (and incorporates supporting exhibits).

Around mid-February 2005, defendant issued a renters policy of insurance, naming plaintiff as the insured.  The policy provided coverage concerning personal property located at 11041 Fairlawn Drive, Parma, Ohio. Woolley was one of the persons responsible for the investigation and handling of an insurance claim under the policy submitted to defendant by plaintiff concerning the alleged theft of personal property from the insured premises that reportedly occurred on April 11, 2005. Plaintiff reported that he discovered the alleged theft upon returning home from work, and the following day, when he proceeded to the Parma Police Department to make a report, he was arrested on an outstanding warrant on charges by his sister and was incarcerated for 60 days.

On April 26, 2005, defendant sent a letter to plaintiff requesting that he submit a Sworn Statement in Proof of Loss as required by the terms and conditions of the policy. Defendant requested that the Proof of Loss be submitted by June 8, 2005.  On or about April 27, 2005, defendant learned that plaintiff had an extensive felony record. Based on criminal court records later obtained, defendant learned that plaintiff had been convicted of various felony offenses,

including felonious assault, aggravated assault, retaliation, breaking and entering, and receiving stolen property (motor vehicle).

On or about June 14, 2005, defendant obtained a recorded statement from plaintiff wherein he stated that the insured premises was a rental property and he had only been living at the insured premises for a few months; the alleged theft had occurred on April 11, 2005; and when he tried to report the alleged theft to the police, he was arrested on a warrant.

On June 21, 2005, defendant sent a letter to plaintiff at a new address he had provided enclosing a copy of the policy and identifying several policy conditions and requirements that plaintiff had failed to meet, including (a) filing a police report, (b) submitting the requested Proof of Loss, (c) submitting an itemized inventory of the items allegedly stolen, and (d) submitting receipts, invoices, warranty manuals, or other proof of purchase of the claimed items.

On July 14, 2005, defendant obtained a copy of a Parma Police report dated March 24, 2005 made by Jeffrey Keith[1] alleging that for the previous three years, individuals had been living at the insured premises without his consent as the owner, had taken and sold about $10,000 worth of personal property and had forged his name in connection with foreclosure proceedings involving the insured premises. According to the police report, Mr. Keith was himself incarcerated at the time of his report.

---

[1] On July 25, 2006, through a retained private investigator, defendant obtained a recorded statement from Jeffrey Keith wherein he stated that he has owned the insured premises since at least the early 1990s; in 2000, he rented the insured premises to plaintiff's sister; when plaintiff's brother Shawn was released from prison, plaintiff and his brothers tried to force the sister from the insured premises; Keith met plaintiff in prison and after plaintiff was released, plaintiff began forging Keith's name on legal papers and representing that he owned the insured premises; and Keith subsequently had everyone evicted from the insured premises.

On July 21, 2005, defendant learned that plaintiff was indicted in June 2005 on charges of forgery, uttering and aggravated theft.  On that date, defendant sent a letter to plaintiff rejecting his insurance claim because he failed to submit a Sworn Statement in Proof of Loss as requested and as required by the terms and conditions of the policy.

For nearly five months no further communications were received from plaintiff by defendant until December 13, 2005, when plaintiff called defendant to inquire about his claim. Plaintiff was advised that his claim had been rejected.  He claimed that he never received the denial letter, although he could not explain why he had not been in contact for nearly five months.  On December 15, 2005, Woolley spoke with plaintiff and read him the rejection letter he claimed never to have received and explained that his claim was denied because he failed to submit a sworn Proof of Loss as required by the policy. Plaintiff claimed that he had submitted a Proof of Loss.

On February 8, 2006, Woolley received a telephone call from attorney Michael Cheselka, representing plaintiff, who claimed that he had the Proof of Loss and would submit it. On March 14, 2006, Woolley received a letter of representation from Cheselka and a four page typed inventory of personal property being claimed by plaintiff. The Sworn Statement in Proof of Loss that defendant had requested was not provided. Woolley sent additional blank Proof of Loss forms to Cheselka's office that day.

On March 29, 2006, defendant received a Proof of Loss form signed by plaintiff and submitting a claim for $21,740 in allegedly stolen personal property. No documentation was submitted to support the items claimed stolen.

On April 25, 2006, in accordance with the terms and conditions of the policy, defendant,

4

through counsel, demanded that plaintiff appear for and submit to an Examination Under Oath and produce certain documents and records on May 18, 2006. Plaintiff did appear with counsel on that date and defendant commenced his Examination Under Oath, which was later terminated by plaintiff because he had to leave for work.  The Examination was later rescheduled for July 27, 2006, but plaintiff called and cancelled it because he was "stuck in traffic."  The Examination was then rescheduled for August 28, 2006. Plaintiff appeared but the Examination did not proceed because attorney Cheselka called at the scheduled time and advised he could not appear as scheduled. The Examination was then rescheduled for September 12, 2006. Again, attorney Cheselka called an hour or so before the scheduled time and advised that plaintiff was "stuck in Toledo" and unable to attend. The Examination was finally conducted on October 27, 2006, wherein plaintiff testified to the following:  All of the claimed items were either gifts or purchased with cash and no documentation was produced to support the existence or ownership of any of the claimed items.  Jeffrey Keith owed him $300,000 for handling certain "personal affairs" and "business affairs" for Keith who purportedly quit claimed the insured premises in partial payment of the debt but the deed was invalid as improperly executed.  Yet, plaintiff paid rent to Keith at times.  Plaintiff insured the premises in 2005 for the first time, even though he or his family members had possession of the insured premises since 1999.  Eviction proceedings were brought against plaintiff to remove him from the insured premises around the time of the alleged theft.

Plaintiff never produced any of the documents and information requested by defendant, including his last three years of income tax returns and contact information of anyone who could verify his ownership of the claimed items.  (Woolley decl. and Exhibits thereto)

5

Plaintiff submits his affidavit (actually an unsworn declaration as permitted by 28 U.S.C. § 1746) which states the following.  As a result of the April 2005 burglary, plaintiff lost personal property in excess of $30,000.00.  He eventually made a police report and submitted a claim to defendant. He lost the original copy of the insurance contract, and defendant refused to provide him with another until the one year period for filing the lawsuit had passed.  Defendant never adequately investigated the claim and refused to settle it based on plaintiff's criminal record. (pltf. decl.)

This matter is now before the Court upon cross motions for summary judgment.  The motions will be addressed simultaneously as they rely on the same arguments and evidence.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

6

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Cross Motions for Summary Judgment**

Defendant argues that the Complaint is time-barred by the one year suit limitation set forth in the policy.  For the following reasons, this Court agrees.

7

The policy states in part:

*Section I Conditions*

**12. Suit Against Us**

No suit or action may be brought against us unless there has been full compliance with all the policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

(Woolley decl. Ex. 1) The Complaint alleges that the loss occurred in April 2005, and this fact is corroborated by the evidence before this Court. Plaintiff did not file this Complaint until April 2007- two years after the loss.

Ohio courts have upheld the enforceability of contractual suit limitation provisions in insurance contracts. In *Jares v. Jefferson Insurance Company,* 1985 WL 9804 (Ohio 8th App. Dist. March 28, 1985)**,** for example, the court recognized,

> The parties to an insurance contract may lawfully limit the time within which suit (or arbitration) may be brought, so long as the period of limitation is not unreasonable. *Appel v. Cooper Ins. Co.* (1907), 76 Ohio St. 52. A limitation period of one year is not inherently unreasonable. *Colvin v. Globe American Cas. Co.* (1982), 69 Ohio St. 2d 293; *Hounshell v. American States Ins. Co.* (1981), 67 Ohio St. 2d 427. An insured is presumed to know the contents of his insurance contract, and is bound by its terms, whether he has read it or not. *Ohio Farmers' Ins. Co. v. Titus* (1910), 82 Ohio St. 161.

Plaintiff argues that defendant either waived the one year limitations period or should be estopped from asserting it. Plaintiff puts forth two bases in support of this argument. Plaintiff first asserts that defendant refused to provide him with a complete copy of the policy until after the one year period had expired. Plaintiff next asserts that defendant mislead him into believing that it was going to settle the claim so that plaintiff would not timely file a lawsuit. For the following reasons, neither assertion is persuasive.

8

With regard to plaintiff's first assertion, the policy was issued in mid-February 2005 and the alleged loss occurred just two months later in April 2005. Plaintiff does not assert that he never received the policy when it was first issued. In fact, his affidavit states that he lost the original copy of the insurance contract. Nonetheless, Woolley declares that defendant provided plaintiff with another copy of the policy along with the June 21, 2005 certified letter which identified several policy conditions that plaintiff had not complied with. According to Woolley, the letter was sent to the new address which plaintiff had provided to defendant. The certified letter is incorporated into Woolley's declaration. (Woolley decl. Ex. 4) Plaintiff's conclusory statement in his own declaration that defendant "withheld the insurance contract from the plaintiff until after the one year clause to file suit [sic] expired in an attempt to prevent the plaintiff from knowing when he had to file suit" is insufficient to contradict or overcome the evidence submitted by defendant. Additionally, plaintiff's statement in his declaration that defendant only sent him a one-page statement verifying coverage is belied by the copy of the June 21, 2005 certified letter submitted to this Court. The letter states that the policy is enclosed for plaintiff's review, and refers to a specific page within the policy.

Plaintiff's second assertion is likewise unavailing. Plaintiff's declaration states that "between the period of the original date of loss on or about April 2005, and up until the actual lawsuit was filed, the defendant would stall the affiant and pacify the affiant unjustifiably informing the affiant they would settle upon approval from a supervisor..." (pltf. decl.) Woolley's declaration, however, incorporates the July 21, 2005 certified letter sent to plaintiff informing him that his claim had been rejected for reason that plaintiff had failed to submit a sworn Proof of Loss. (Woolley decl. Ex. 6) The letter clearly shows that defendant was not

9

leading plaintiff to believe that it would settle the claim up to the time that this lawsuit was filed. Woolley additionally declares that on December 15, 2005, he spoke with plaintiff and read the rejection letter to him which plaintiff claimed never to have received. Woolley states that he explained that the claim was denied because plaintiff failed to submit a sworn Proof of Loss as required by the policy. (Woolley decl.) Again, plaintiff cannot controvert this evidence. Plaintiff failed to file suit within one year of the date of loss, even though he knew three months after the loss that defendant had rejected his claim.

Plaintiff asserts that he never received the July 21 letter. Even if true, it has been recognized that there is no requirement that an insured wait for a formal denial of his claim before he can bring suit against the insurer. *Ponamerenko v. Allstate Insurance Co.,* 1995 U.S.Dist. LEXIS (N.D.Ohio June 13, 1995). Finally, the record shows that after the July 21, 2005 denial letter, defendant only continued to investigate and attempt to gather information- not to settle the claim. Defendant cannot be estopped on this basis from enforcing its one year limitation on the filing of suit. *See Broadview Savings & Loan Co. v. Buckeye Union Ins. Co.,* 70 Ohio St.2d 47 (1982) (Although the insurance company was attempting to gather information for consideration of the claim, where no settlement offers were made the insurer was not estopped from enforcing the suit limitation provision.)

For these reasons, plaintiff's Complaint is time-barred and defendant's Motion for Summary Judgment is granted on this basis.

Assuming the lawsuit was timely, defendant argues that plaintiff is precluded from recovering under the policy due to his failure to produce documents and records in breach of the policy conditions. For the following reasons, this Court agrees.

10

The policy provides in part:

*Section I Conditions*

**12. Suit Against Us**

No suit or action may be brought against us
unless there has been full compliance with all the
policy terms...

**3. What You Must Do After A Loss**

In the event of a loss to any property that may be covered
by this policy, you must:

\* \* \*

d) give us all accounting records, bills, invoices and
other vouchers, or certified copies, which we may
reasonably request to examine and permit us to
make copies.

(Woolley decl. Ex. 1)

As evidenced by the April 25, 2006 letter prepared by defendant's counsel, and incorporated into Woolley's declaration, plaintiff was requested to produce three years of income tax returns and documentation (receipts, manuals, product warranties, names of persons, etc.) verifying plaintiff's ownership of the items he was claiming as losses. (Woolley decl. Ex. 9). Woolley declares that plaintiff "never produced any of the documents and information requested by [defendant], including his last three years of income tax returns and contact information of anyone who could verify his ownership of the claimed items." (*Id.* ¶ 25).

Defendant asserts that the requested tax returns were material to whether plaintiff had a financial motive to submit a fraudulent claim, especially where plaintiff was claiming the theft of $30,000 in personal property without any photographs or receipts to show that the items existed.

11

It has been noted that Ohio courts recognize that "an insured is required to cooperate with its insurer and that failure to do so results in cessation of the insurer's obligations under the insurance contract." *Ponamerenko v. Allstate Insurance Co.,* 1995 U.S.Dist.LEXIS 22460 (N.D.Ohio June 13, 1995) (quoting *Luntz v. Stern*, 135 Ohio St.2d 225 (1939) ) The "insured's lack of cooperation must result in a material and substantial prejudice to the insurer." *Id.* The duty to cooperate includes providing documentation requested of the insured by the insurer. *Id. See also Doerr v. Allstate Insurance Co.,* 121 Fed. Appx.638 (6th Cir. 2005) (Under Ohio law, an insured party has a duty to comply with a cooperation clause which is frequently included in an insurance policy to protect insurance companies against fraudulent claims.)

In a second affidavit/declaration, plaintiff states that he attempted to provide to defendant a video of his residence and property but that defendant refused to accept it. Plaintiff additionally states that defendant would not accept the original notarized proof of loss statement and inventory list provided by plaintiff in 2005. Finally, plaintiff states that he provided the defendant with his 2005 tax returns and W2s in 2006, and that he could not provide three years of tax returns because he was incarcerated prior to 2005 and did not have any to produce. (Doc. 23-2)

Defendant argues that plaintiff's conclusory allegations are insufficient to overcome the documented record. This Court agrees. The July 21, 2005 letter incorporated into Woolley's declaration states that defendant rejected plaintiff's claim because of "Your failure to submit a Sworn Statement in Proof of Loss and cooperate with the investigation of your claim." (Woolley decl. Ex. 6) This was the original basis for the rejection of plaintiff's claim. Plaintiff ultimately submitted a sworn Proof of Loss in March 2006. This document is also incorporated into

12

Woolley's declaration. (*Id.* Ex. 8) Wooley declares, however, that no documentation was submitted to support the items claimed stolen. On this basis, defendant maintained its denial of the claim. (Woolley decl. ¶¶ 25, 26) The transcripts of plaintiff's Examination Under Oath are submitted and support Woolley's statement. (*Id.* Exs. 10, 11) Therein, plaintiff testified that he never provided to defendant any receipts or other documentation for the items claims to be lost. (Ex. 10 at 81-82) He also testified that he had no receipts or warranty information. (Ex. 11 at 141) Finally, plaintiff testified that he made a videotape of the garage prior to the loss, when he "put the stuff in there," but that the videotape is gone and he does not know where it is. (*Id.* 150-151)

For these reasons, defendant has shown that plaintiff's failure to comply with the policy conditions precludes his recovery.

For the foregoing reasons, defendant's Motion for Summary Judgment is granted[2] and plaintiff's Motion for Summary Judgment is denied.

**(2) Plaintiff's Motion to Withdraw and/or Amend Defendant's First Set of Requests for Admissions Based on the Plaintiff Never Being Served**

Defendant asserts that on March 13, 2008, it served its First Request for Admissions to plaintiff by regular mail at the address at which plaintiff had provided to defendant's counsel and the Court during a telephone status conference. Plaintiff has not responded to the Request for Admissions. Defendant asks that they be deemed admitted pursuant to Fed.R.Civ.P. 36 which

---

[2] Although the Complaint does not expressly allege bad faith, defendant additionally argues that to the extent plaintiff has asserted a bad faith claim, this claim fails as well because defendant did not wrongfully deny plaintiff's claim and plaintiff failed to cooperate with his obligations under the policy. This Court agrees with defendant.

13

states, "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney…"

Defendant requested that plaintiff admit the following:

Request No. 3: Admit that you were residing in the premises at the time of the Loss without the permission or authorization of the legal owner of the premises.

Request No. 4: Admit that you did not provide Allstate with any documents evidencing or establishing your claimed ownership of the premises at the time of the Loss.

Request No. 5: Admit that you intentionally misrepresented to Allstate that you owned the premises at the time of the Loss.

Request No. 6: Admit that you did not provide Allstate with any of the documents evidencing or establishing your ownership of the personal property items that you claimed to have been stolen in the Loss, which Allstate had requested.

Request No. 7: Admit that you intentionally misrepresented to Allstate that you owned the personal property items that you claimed to have been stolen in the Loss.

Request No. 8: Admit that you intentionally misrepresented to Allstate that the Loss occurred.

Request No. 9: Admit that you intentionally misrepresented to Allstate that the personal property items included in your insurance claim had been stolen.

Request No. 10: Admit that you did not provide Allstate with any of the tax returns that Allstate had requested.

Request No. 11: Admit that you did not provide Allstate with any of the names, addresses and/or phone numbers of other individuals who could verify your ownership of any of the personal property items included in your insurance claim, which information Allstate had requested.

In response, plaintiff now seeks leave to withdraw and/or amend the Requests for Admissions on the basis that he was never served with them because they were mailed to the wrong address. Plaintiff's second declaration asserts that he was confined in the Cuyahoga County jail at the time the Requests were served and defendant did not mail them there although it knew of plaintiff's status given that this information was divulged during the status conference. Defendant submits the declaration of its attorney, Robert Chudakoff, who avers:

> On or about February 14, 2008, the Court conducted a telephone status conference in the captioned case. Because of his incarceration at the time, Plaintiff Joseph McGrath participated in the status conference by telephone from jail. During the status conference, I expressed concern to the Court over the difficulty in successfully serving Plaintiff with discovery requests. To address this concern, the Court required Plaintiff to provide a specific address at which Allstate could serve him with written discovery while he was incarcerated. Plaintiff provided the address in Chesterland, Ohio shown on the Certificate of Service of Allstate's Request for Admissions to Plaintiff in this case. Allstate served its Request for Admissions upon Plaintiff at that address.

(Doc. 25 Ex. 3)

Plaintiff's second declaration asserts that during the status conference he provided the Chesterland address as "an alternative" to be used only in the event that he was released from the County Jail. Plaintiff states that he was in the County Jail until his sentencing of March 19, 2008. After, he was sent to Lorain Correctional Institution. He subsequently filed a notice of change of address to advise defendant and the Court of such.

Defendant asserts, however, that it was plaintiff's incarceration which prompted defense counsel to request at the status conference that plaintiff provide an address for service to ensure that he would receive discovery. This Court agrees. Plaintiff was incarcerated at the time of the status conference and the Chersterland address was provided for the purposes of serving discovery. Defendant did so.

15

Fed.R.Civ.Pro.36(b) states,

**(b) Effect of an Admission; Withdrawing or Amending It.** A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to the withdrawn or amended.... [T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits...

The Sixth Circuit has addressed the withdrawal of admissions:

The first prong of the test articulated in Rule 36(b) is satisfied when upholding the admission would practically eliminate any presentation on the merits of the case. With regard to prejudice, the second prong of the test, the prejudice contemplated by Rule 36(b) is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Instead, prejudice under Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.

*Riley v. Kurtz,* 1999 WL 801560 (6th Cir. Sept. 28, 1999) (internal quotations and citations omitted). Chudakoff's declaration addresses prejudice: "Plaintiff never responded to Allstate's Request for Admissions until well after Allstate had filed its Motion for Summary Judgment in this case. Absent Plaintiff's admissions, Allstate would have conducted additional discovery, including Plaintiff's deposition, to support its Motion for Summary Judgment in this case."

The Court finds that withdrawal of the admissions would be prejudicial to defendant who would otherwise have conducted depositions. The admissions are further support of defendant's entitlement to summary judgment.

For these reasons, plaintiff's Motion to Withdraw and/or Amend Defendant's First Set of Requests for Admissions Based on the Plaintiff Never Being Served is denied.

**Conclusion**

For the foregoing reasons, defendant Allstate's Motion for Summary Judgment is granted, plaintiff's Motion for Summary Judgment is denied and plaintiff's Motion to Withdraw

and/or Amend Defendant's First Set of Requests for Admissions Based on the Plaintiff Never Being Served is denied.

        IT IS SO ORDERED.

                                    /s/ Patricia A. Gaughan
                                    PATRICIA A. GAUGHAN
                                    United States District Judge

Dated: 8/19/08